## A04A1877. THE STATE v. GILLASPY.
### (605 SE2d 835)

ELDRIDGE, Judge.

The State appeals from the Cobb County State Court's grant of Caressa Gillaspy's motion to suppress the results of her blood test for failure to provide Gillaspy with an independent chemical test pursuant to implied consent laws. Because the evidence of record does not establish that Gillaspy made a request for an independent chemical test, we reverse.

Officer C. Flowers with the City of Smyrna Police Department stopped Gillaspy for committing a traffic violation. Upon speaking with her, the officer smelled an odor of an alcoholic beverage. A subsequent sobriety investigation led to Gillaspy's arrest for DUI. Flowers then timely read Gillaspy the implied consent notice for suspects age 21 and over, OCGA § 40-5-67.1 (b) (2). An audio-video tape of the reading is before us. While reading the conclusion of the statutory notice to Gillaspy, the following colloquy ensued:

> [Flowers (reading):] "If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your breath under the implied consent law?"
> [Gillaspy:] I will do a blood test.
> [Flowers:] You want a blood test? Well, let me re-read it to you. "Will you submit to the state administered chemical tests of your *blood* under the implied consent law?"
> [Gillaspy:] Yes, sir.

Officer Flowers took Gillaspy to Emory Adventist Hospital in Smyrna where her blood was drawn. A subsequent analysis performed by the GBI Crime Lab showed a blood alcohol content of 0.18. Gillaspy did

not request another, independent test of her blood; nor did she express dissatisfaction with Officer Flowers' accommodation of her request for a blood test, as opposed to a breath test.

Gillaspy filed a motion to suppress wherein it was claimed that the statement, "I will do a blood test," was a request for an independent chemical test. A hearing was held on the motion. Notably, Gillaspy did not testify. Officer Flowers testified at the motion hearing that he interpreted Gillaspy's statement, "I will do a blood test," as a response to his question, "Will you submit to a breath test?" and, as such, was a statement regarding the specific State-administered chemical test to which Gillaspy would submit. Flowers then designated a State-administered blood test to accommodate Gillaspy. He testified that Gillaspy did not ask for an independent blood test.

Based upon two decisions from this Court, *Johnson v. State*[1] and *Ladow v. State*,[2] the trial court determined that the phrasing, "I will do a blood test," constituted a request for an independent chemical test because it was "no different in its phrasing or substance than the statements made by the defendants in *Ladow* or *Johnson*, supra." *Held*:

An accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed — in light of the circumstances — to be an expression of a desire for an additional, independent test.[3] In adhering to this principle, we are guided by the circumstances surrounding an alleged request, not simply the semantics of the alleged request itself. In that regard, a statement such as that found in this case, or in *Ladow*, or in *Johnson*, does not occur in isolation. Thus, while Gillaspy's statement, "I will do a blood test," may be substantively the same as the statement made by the defendant in *Johnson*, "I will take a urine test," the circumstances surrounding the making of these two statements may compel different findings.

In *Johnson*, after the defendant stated, "I will take a urine test," the officer informed him that a State-administered *breath* test would be performed, but the officer assured the defendant that "after submitting to the breath test, he could take whatever test he wanted."[4] However, the officer did not follow through with this assurance, even after the defendant later asked, " 'When can I take my chemical

---

[1] 261 Ga. App. 633 (583 SE2d 489) (2003).
[2] 256 Ga. App. 726 (569 SE2d 572) (2002).
[3] Id. at 728.
[4] *Johnson v. State*, supra at 634.

test?' "[5] A State-administered breath test was performed, and this Court had no difficulty in concluding that the defendant's statements — under the circumstances presented — reasonably could be construed as a request for an independent urine test, which was not accommodated.

Similarly, in *Ladow*, supra, the circumstances surrounding the defendant's affirmative statement, "I want a blood test," demonstrated that such was a request for an independent test. In *Ladow*, immediately after the officer began reading the implied consent notice, the defendant interrupted him, stating " 'I've already heard all that.' "[6] After expressing his familiarity with implied consent law and without allowing the officer to finish reading the notice, the defendant stated, "I want a blood test." The defendant's statement was not in response to any question posed by the officer and, under the circumstances presented, such statement plainly indicated that the defendant knew that implied consent law gave him the right to demand an independent blood test and that he was so demanding. A recent case, *McGinn v. State*,[7] provided us with an opportunity to reaffirm the holding in *Ladow*. In *McGinn*, before being placed under arrest or read the implied consent notice, the defendant informed the detaining officer that he knew his rights under the law and that he wanted a blood test.[8] As in *Ladow*, the defendant's statement was not made in response to a question posed by law enforcement, but clearly indicated both the defendant's knowledge of his right under implied consent to obtain an independent blood test and his desire to invoke that right. The fact that the defendant made his request for an independent test before the implied consent notice was read did not alter the fact that such request was made. As we explained, "Implied consent warnings are informational, and if an accused already possesses that information and has requested an independent test, the giving of the warnings themselves cannot become the stumbling block to fulfilling the otherwise unambiguous request."[9] Thus, the circumstances presented in both *Ladow* and *McGinn* impelled this Court's conclusion that the alleged requests, "I want a blood test," reasonably could be construed as requests for a chemical test independent from the one sought by the State.

The circumstances of the instant case require a different result. Here, the officer read the implied consent notice, culminating with the question, "Will you submit to the state administered chemical

---

[5] Id.

[6] *Ladow v. State*, supra at 727.

[7] 268 Ga. App. 450 (602 SE2d 209) (2004).

[8] Id. at 451.

[9] Id. at 452.

tests of your breath?" The audio-video tape clearly shows that Gillaspy's statement, "I will do a blood test," was in response to the officer's question and indicated the desire for a State-administered blood test. Moreover, Gillaspy readily agreed to a State-administered blood test when the officer acquiesced in her desire, and there is no evidence that any additional request was made. Officer Flowers' testimony at the motion hearing corroborates this evidence. Gillaspy did not testify at the motion hearing; there is no evidence of record that Gillaspy wanted an *independent* chemical test, and the assertions of her attorney cannot make out such a claim.[10] The trial court's grant of the motion to suppress on the basis of the words used in the statement, alone, without a consideration of the circumstances in which such words were uttered is error as a matter of law. Under the circumstances presented here, Gillaspy's statement cannot reasonably be construed as a request for a chemical test independent from the one sought by the State.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED OCTOBER 19, 2004.

*Barry E. Morgan, Solicitor-General, Bonnie A. Derrer, Assistant Solicitor-General*, for appellant.

*Jeremy E. Citron, George A. Stein*, for appellee.

---

[10] See *Sangster v. Dujinski*, 264 Ga. App. 213, 217 (590 SE2d 202) (2003) (argument of counsel is not evidence).