A07A0418. ANDERTON v. THE STATE.
(642 SE2d 137)

BLACKBURN, Presiding Judge.

Following a bench trial, Rick Anderton appeals his conviction of driving with an unlawful alcohol concentration,[1] contending that the trial court erred in denying his motion to suppress the results of a State breath test, because (1) he requested an independent chemical test and was not granted one; and (2) the arresting officer misled Anderton regarding his right to have an independent chemical test. We disagree and affirm.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State.*[2] So viewed, the evidence from the suppression hearing, which focused exclusively on the implied consent warning during the DUI traffic stop, showed that Anderton was properly read the appropriate implied consent warning from OCGA § 40-5-67.1 (b) (2). After the warning was read, Anderton responded as follows:

> Officer (finishing the implied consent warning): "Will you submit to the state administered chemical tests of your

---

[1] OCGA § 40-6-391 (a) (5).
[2] *Vansant v. State,* 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

breath under the implied consent law?"
Anderton: "I will take a blood test."

The officer then replied that that was not the option he gave Anderton. The record reveals no other discussion of testing.

The officer then took Anderton to the police station where Anderton submitted to a breath test. Based on the results of the test, Anderton was charged with driving with an unlawful alcohol concentration.[3] Anderton moved to suppress the results of the breath test, which motion was denied, and, following a bench trial on stipulated facts, Anderton was convicted, giving rise to this appeal.

1. Anderton contends that the trial court erred by denying his motion to suppress, in that he requested an independent blood test which was not granted. We disagree.

> An accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed — in light of the circumstances — to be an expression of a desire for an additional, independent test. In adhering to this principle, we are guided by the circumstances surrounding an alleged request, not simply the semantics of the alleged request itself.

(Footnote omitted.) *State v. Gillaspy.*[4]

Here, Anderton's alleged request for an independent test, "I will take a blood test," came in response to the question, "Will you submit to the state administered chemical tests of your breath under the implied consent law?" At the suppression hearing, when questioned as to whether he was requesting an independent test, Anderton replied, "I don't know about that. I thought they took you to a hospital and gave you a blood test somewhere. I didn't know there were any other kind of options or independent . . . test or whatever. A blood test is a blood test to me."

Anderton's acknowledged indifference as to whether his blood test was performed by the State or independently demonstrates that Anderton's intent was to have the officer designate a blood test, rather than a breath test, which he cannot do. This interpretation is consistent with the context of the statement (in response to the officer's request for consent), the wording of the statement, and Anderton's own testimony regarding the statement. Under these circumstances, we affirm the trial court's ruling that Anderton's

---

[3] Two other charges, DUI less safe and failure to maintain a lane, were nolle prossed.
[4] *State v. Gillaspy*, 270 Ga. App. 111, 112 (605 SE2d 835) (2004).

statement that "I will take a blood test" was not a request for an independent test but a response to the officer's request and an attempt to designate which test would be administered by the State.

In so ruling, we find the circumstances here distinct from *Ladow v. State*,[5] in which we reversed a trial court's denial of a motion to suppress where the defendant interrupted the officer during the implied consent warning and stated, "I want a blood test." Not only was that wording different, but the statement was independently made and not in response to a request for consent to a breath test.

We likewise find the facts here distinct from those in *Johnson v. State*,[6] in which the defendant, upon being asked to consent to a breath test, replied, "I'll take a urine test." The officer replied that after submitting to a breath test "he could take whatever test he wanted," and again asked him for his consent to the state-administered test. The defendant consented and, while still on the scene, asked when he could take "my chemical test," to which the officer responded that he would be taken to the jail for the test, which was never given. Under those circumstances, we concluded that "these statements" expressed the defendant's desire for an independent test. Id. at 637 (2). Here, however, the colloquy regarding the breath test included no such request for an independent test, and Anderton's own testimony supports the conclusion that he was simply trying to designate which type of test the State would administer.

Therefore, we find this case to be more factually and analytically similar to *State v. Gillaspy*.[7] In that case, we held that the defendant's statement could not reasonably be construed as a request for an independent chemical test where the defendant was asked for consent to a breath test, the defendant replied, "I will do a blood test." (Punctuation omitted.) Id. at 112. *Gillaspy* was somewhat clearer than the case before us, because the officer chose to immediately revise his initial request and sought consent for a blood test, to which the defendant then consented. Nevertheless, in light of the similarity to *Gillaspy* and Anderton's acknowledgment that "[a] blood test is a blood test to me," we affirm the trial court's ruling.

2. Anderton also contends that the police officer made misleading statements following the implied consent warning which deprived him of making an informed choice. We disagree.

---

[5] *Ladow v. State*, 256 Ga. App. 726, 727 (569 SE2d 572) (2002).

[6] *Johnson v. State*, 261 Ga. App. 633, 634 (583 SE2d 489) (2003).

[7] *State v. Gillaspy*, supra, 270 Ga. App. 111.

The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing. Even when the officer properly gives the implied consent notice, if the officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing, the defendant's test results or evidence of his refusal to submit to testing must be suppressed. The suppression of evidence, however, is an extreme sanction and one not favored in the law.

(Citations and punctuation omitted.) *State v. Chun.*[8]

Here, after Anderton answered "I will take a blood test" to the officer's request for his consent to a breath test, the officer stated that a blood test was not the option presented by the officer. Anderton argues that this statement rendered Anderton incapable of making an informed decision about whether to submit to the breath test. However, the officer was correct in stating that he had not presented Anderton with an option to have a state-administered blood test. Therefore, since the officer's statement was true, "the only question that remains is whether there was a substantial basis for the trial court's determination that the officer's statements were [not] so misleading as to have rendered [Anderton] unable to make an informed choice regarding whether to refuse testing." (Punctuation omitted.) *State v. Chun,* supra, 265 Ga. App. at 532. Accord *Walczak v. State.*[9]

The evidence is undisputed that the officer correctly read the implied consent warning. As the officer's following statement was true and came in the context of an exchange regarding the method of state-administered testing, the officer's statement did not premise Anderton's consent on incorrect information or false implication. Compare *State v. Kirbabas*[10] (ruling that an officer's statement that he would suspend defendant's license if she refused breath test was not misleading because the officer initiates suspension proceedings and provides the evidence of refusal) with *State v. Terry*[11] (upholding the grant of a motion in limine because officer's statement that the defendant had to "bond out" before she would be able to obtain an independent chemical test misstated the law and was misleading,

---

[8] *State v. Chun,* 265 Ga. App. 530, 531 (594 SE2d 732) (2004).

[9] *Walczak v. State,* 259 Ga. App. 140, 142 (1) (575 SE2d 906) (2003).

[10] *State v. Kirbabas,* 232 Ga. App. 474, 479 (1) (c) (502 SE2d 314) (1998).

[11] *State v. Terry,* 236 Ga. App. 248, 250-251 (511 SE2d 608) (1999).

and because substantial other misleading information compounded the defendant's confusion). Instead, the record supports the trial court's finding that the officer's statement was merely a clarification of his designation that the state-administered test would be a breath test. Accordingly, we hold that the circumstances here did not render Anderton unable to make an informed choice about whether to submit to the breath test.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED FEBRUARY 7, 2007.

*Jeremy E. Citron,* for appellant.

*Jamie K. Inagawa, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General,* for appellee.